# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

COREY RAMON DAVIS,     :

  Petitioner,      :

vs.         : CIVIL ACTION NO. 10-0291-CG-C

UNITED STATES OF AMERICA,  : CRIMINAL ACTION NO. 08-0352-CG

  Respondent.

## REPORT AND RECOMMENDATION

Petitioner, Corey Ramon Davis, a federal prison inmate proceeding *pro se*, has filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 48). This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Following consideration of all relevant pleadings in this case, it is recommended that Davis' § 2255 motion be denied and that it be found he is not entitled to a certificate of appealability.

## FINDINGS OF FACT

1. On October 30, 2008, Davis was charged, by indictment, with unlawfully, knowingly and intentionally possessing with the intent to distribute 59.55 grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1). (Doc. 1) The indictment also advised Davis that since the quantity of crack cocaine involved exceeded 50 grams, he was "subject to the penalty provisions of Title 21, United States Code, Section 841(b)(1)(A)." (*Id.*)

2. On January 6, 2009, the government filed notice of enhancement information pursuant to 21 U.S.C. § 851(a). (Doc. 19) The government gave notice of two prior felony drug convictions both of which would increase Davis' "statutory sentence . . . if convicted of Count One in the Indictment . . . to a minimum mandatory sentence of life imprisonment, a $8,000,000.00 fine and a $100 special assessment[]" and any one of which would increase Davis' "statutory sentence . . . if convicted of Count One in the Indictment . . . to a minimum mandatory sentence of 20 years confinement to a maximum of life imprisonment, a term of supervised release of <u>at least</u> eight years, a $4,000,000.00 fine and a $100.00 special assessment." (*Id.* at 2, ¶¶ 3 & 4; *see also id.* at 1)

3. While Davis never filed written notice of his intent to plead guilty to the sole count of the indictment, minutes before a scheduled suppression hearing on January 27, 2009,[1] petitioner and the government filed a plea agreement and factual resume with the Court (Doc. 29) The plea agreement reads, in relevant part, as follows:

## PLEA AGREEMENT

The defendant, **COREY RAMON DAVIS**, represented by his counsel, and the United States of America have reached a Plea Agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

## RIGHTS OF THE DEFENDANT

---

[1] The Court entered an order on the guilty plea and within the context of that order cancelled the suppression hearing and mooted the motion to suppress. (*See* Doc. 30)

1. The defendant understands his/her rights as follows:

    a. To be represented by an attorney;

    b. To plead not guilty;

    c. To have a trial by an impartial jury;

    d. To confront and cross-examine witnesses and to call witnesses and produce other evidence in his/her defense;

    e. To not be compelled to incriminate himself/herself.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

2. The defendant waives rights b through e, listed above, and pleads guilty to Count One of the Indictment. Count One charges a violation of Title 21 United States Code, Section 841(a)(1), possession with the intent to distribute crack cocaine.

.   .   .

4. The defendant expects the Court to rely upon his/her statements here and his/her response to any questions that he/she may be asked during the guilty plea hearing.

5. The defendant is not under the influence of alcohol, drugs, or narcotics. He/She is certain that he/she is in full possession of his/her senses and mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6. The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. He/She has discussed the facts of the case with his/her attorney, and his/her attorney has explained to the defendant the essential legal elements of the criminal charge(s) which has/have been brought against him/her. The defendant's attorney has also explained to the defendant his/her understanding of the United States' evidence.

7. The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge(s)

beyond a reasonable doubt. The defendant and his/her counsel have discussed possible defenses to the charge(s). The defendant believes that his/her attorney has represented him/her faithfully, skillfully, and diligently, and he/she is completely satisfied with the legal advice of his/her attorney.

8. A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct.

9. This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations apart from those set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court may impose. The defendant avers that he/she is pleading guilty because he/she knows that he/she is guilty.

## PENALTY

10. The maximum penalty the Court could impose as to Count One of the Indictment is:

      a. Maximum minimum 10 years to life imprisonment;

      b. A fine not to exceed $4,000,000.00 [];

      c. A term of supervised release of 5 years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, he/she could be imprisoned for the entire term of supervised release; and

      d. A mandatory special assessment of $100.00[.]

**However, based upon the Enhancement Information, filed by the United States in this case, the defendant is subject to a minimum mandatory sentence of life imprisonment, on Count One, a fine not to exceed $8,000,000.00, and a mandatory special assessment of $100.00[.]**

## SENTENCING

11.     The Court will impose the sentence in this case. The United States Sentencing Guidelines apply in an advisory manner to this case. The defendant has reviewed the application of the Guidelines with his/her attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that he/she will not be allowed to withdraw his/her guilty plea if the applicable guideline range is higher than expected, if the Court departs from the applicable advisory guideline range, or if the Court imposes a sentence notwithstanding the Guidelines.

12.     The United States may provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

13.     The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

14.     Both the defendant and the United States are free to allocute fully at the time of sentencing.

.     .     .

## UNITED STATES' OBLIGATIONS

16.     The United States will not bring any additional charges against the defendant related to the facts underlying the Indictment. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

17.     The United States will recommend to the Court that the defendant be sentenced at the low end of the applicable advisory sentencing guideline range as determined by the Court.

.    .    .

## <u>LIMITED WAIVER OF RIGHT TO APPEAL SENTENCE</u>

19.    The defendant acknowledges that he/she is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. In exchange for the recommendations made by the United States in this Plea Agreement, the defendant knowingly and voluntarily waives the right to appeal any sentence imposed in this case.

20.    With the limited exceptions noted below, the defendant also waives his/her right to challenge any sentence so imposed, or the manner in which it was determined, in any collateral attack, including but not limited to, a motion brought under 28 U.S.C. § 2255. "Any sentence so imposed" includes any determination or sentence imposed in a supervised release revocation proceeding.

21.    The defendant reserves the right to contest in an appeal or post-conviction proceeding any of the following:

a.    Any punishment imposed in excess of the statutory maximum;

b.    Any punishment that constitutes an upward departure from the guideline range; or

c.    A claim of ineffective assistance of counsel.

22.    In addition, the defendant reserves the right to petition the Court for resentencing pursuant to 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the defendant's sentence.

(*Id*. at 1, 2-5 & 9-10 (emphasis in original)) Appearing before Davis' signature line on page 11 of the agreement is this paragraph: "I have consulted with my counsel and fully understand all my rights with respect to the offense(s) charged in the Indictment pending against me. **I have read this Plea Agreement and carefully reviewed every part of it**

**with my attorney**. **I understand this agreement, and I voluntarily agree to it.** I hereby

stipulate that the Factor Resume,[2] incorporated herein, is true and accurate in every

---

[2]     The Factual Resume, which Davis also signed, reads as follows:

The defendant, **COREY RAMON DAVIS**, admits the allegations of Count One of the Indictment.

### ELEMENTS OF THE OFFENSE

**DAVIS** understands that in order to prove a violation of Title 21, United States Code, Section 841(a)(1), as charged in Count One of the Indictment, the United States must prove:

First:  That the defendant knowingly and willfully possessed a controlled substance as charged; and

Second: That he possessed the substance with the intent to distribute it or he distributed it.

### OFFENSE CONDUCT

Defendant, **COREY RAMON DAVIS**, admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case.

On or about August 15, 2008, members of the Demopolis Police Department executed a lawful search warrant to 708 2nd Avenue, Demopolis, Alabama. This is the residence of **COREY RAMON DAVIS**. During their search, Interim Police Chief[] Tim Williams was in the middle bedroom of the mobile home. While searching he noticed a blanket on the floor and sticking up from inside the blanket he saw a piece of a plastic baggie. He picked up the plastic baggie and it contained a large quantity of crack cocaine. He searched further and found two more plastic bags containing crack cocaine. The substance was weighed on the scene and weighed 59.55 grams. Officers also found a set of digital scales on the kitchen table and numerous plastic bags in the back pants pocket of **COREY RAMON DAVIS**. These were the same type plastic bags that were found to contain crack cocaine in the bedroom.

The defendant, **COREY RAMON DAVIS** knowingly possessed the crack cocaine with the intent to distribute it.

(Continued)

respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt." (*Id.*)

4.      On January 27, 2009, Davis entered a counseled guilty plea to Count One of the Indictment. (Doc. 50, Guilty Plea Transcript)

>       THE COURT:        . . . Mr. Davis, I understand you're pleading guilty to count one of the indictment; is that correct?

>       DEFENDANT DAVIS:     Yes, ma'am.

>                   .        .        .

>       THE COURT:       Is there any objection from counsel or the parties to doing this together as opposed to individually?

>       MR. BIVENS:        None from here, Your Honor.

>                   .        .        .

>       THE COURT:       Would you place the defendants under oath, please[.]

>                   .        .        .

>       (The defendants were sworn.)

>                   .        .        .

>       THE COURT:        . . . Do each of you understand that you are now under oath and that if you answer any of my questions falsely, those

---

(Doc. 29, FACTUAL RESUME, at 1-2)

answers may later be used against you in a separate prosecution for perjury or for making a false statement?

      DEFENDANT DAVIS:     Yes, ma'am.

.     .     .

      THE COURT:     . . . Mr. Davis, what is your full name?

      DEFENDANT DAVIS:     Corey Ramon Davis.

      THE COURT:     And how old are you?

      DEFENDANT DAVIS:     32.

      THE COURT:     How far did you go in school?

      DEFENDANT DAVIS:     Ninth grade.

.     .     .

      THE COURT:     Have either of you been treated recently for any mental illness or addiction to narcotic drugs of any kind?

      DEFENDANT DAVIS:     No.

.     .     .

      THE COURT:     Are either of you currently under the influence of any drug, medication, or alcoholic beverage?

.     .     .

      DEFENDANT DAVIS:     No ma'am.

.     .     .

      THE COURT:     . . . Have each of you received a copy of the indictment, the written charges pending against you?

      DEFENDANT DAVIS:     Yes, ma'am.

.     .     .

THE COURT:          And have you fully discussed those charges and the case in general with your lawyer?

DEFENDANT DAVIS:     Yes, ma'am.

.     .     .

THE COURT:          Do you understand the charges pending against you?

DEFENDANT DAVIS:     Yes, ma'am.

.     .     .

THE COURT:          Are you fully satisfied with the counsel, representation, and advice given to you in your case by your attorney?

DEFENDANT DAVIS:     Yes, ma'am.

.     .     .

THE COURT:          . . . For Mr. Davis I have been provided with a plea agreement and an attached resume and I want you to take a look at those documents and tell me on the record whether that is your plea agreement and factual resume and whether you signed those documents.

.     .     .

THE COURT:          Is that your plea agreement and factual resume and did you sign those documents?

DEFENDANT DAVIS:     Yes, ma'am.

THE COURT:          All right. Mr. Davis, did you have the opportunity to read and discuss your plea agreement with Mr. Bivens before you signed it?

DEFENDANT DAVIS:     Yes, ma'am.

THE COURT: And do you have any agreements concerning your case with the United States Government that are not written down in your plea agreement?

DEFENDANT DAVIS: No, ma'am.

THE COURT: Do you understand the terms of your plea agreement?

DEFENDANT DAVIS: Yes, ma'am.

THE COURT: Has anyone made any other or different promises or assurances to you of any kind in an effort to induce you to plead guilty in your case?

DEFENDANT DAVIS: No, ma'am.

THE COURT: Do you understand that certain of the terms of the plea agreement are merely recommendations to the Court and that I can reject those recommendations without permitting you to withdraw your plea of guilty and impose a sentence that's more severe than you might anticipate?

DEFENDANT DAVIS: Yes, ma'am.

.       .       .

THE COURT: For both of you, has anyone attempted in any way to force you to plead guilty in your case?

DEFENDANT DAVIS: No, ma'am.

.       .       .

THE COURT: Are you pleading guilty of your own free will because you are guilty?

DEFENDANT DAVIS: Yes, ma'am.

.       .       .

THE COURT:    Do you understand that the offense[] to which you are pleading guilty [is a] felony offense[] . . . and if your plea is accepted, you will be adjudged guilty of that offense and that such adjudication may deprive you of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury, the right to possess any kind of firearm, and it could entail the loss of certain federal benefits? Do each of you understand those possible consequences of your guilty plea?

DEFENDANT DAVIS:    Yes, ma'am.

.    .    .

THE COURT:    . . . Mr. Davis, the maximum penalty the Court could impose upon conviction of the offense to which you are pleading guilty is a mandatory minimum 10 years' imprisonment up to life imprisonment, a fine not to exceed $4 million, a term of supervised release of five years which would follow any term of imprisonment, and if you violated the terms of supervised release you could be [imprisoned] for that entire term as well, and a mandatory special assessment of $100. I understand that the United States has filed an enhancement in your case, however, which apparently makes the mandatory sentence a life imprisonment sentence and a fine not to exceed $8 million, which is a change from what I just said earlier. Do you understand those possible consequences of your guilty plea?

DEFENDANT DAVIS:    Yes, ma'am.

.    .    .

THE COURT:         . . . Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to consider in determining the sentence in a criminal case. Have you and your attorney talked about how the sentencing guidelines might affect your sentence?

DEFENDANT DAVIS:      Yes, ma'am.

.         .         .

THE COURT:         Do you understand that the Court will not be able to determine the advisory guidelines sentencing range for your case until after the probation office has completed a presentence report and you and the government have had the opportunity to challenge the reported facts and the application of the guidelines recommended by the probation office and that the guideline range determined by the Court may be different from any estimate your attorney or anybody else might have given you in this case?

DEFENDANT DAVIS:      Yes, ma'am.

.         .         .

THE COURT:         Do you further understand that after your guideline range has been determined, the guidelines themselves further provide for departures either upwards or downwards from that range in certain circumstances?

DEFENDANT DAVIS:      Yes, ma'am.

.         .         .

THE COURT:         And do you understand that although the Court is required to consider the guidelines when determining the sentence, the guidelines are advisory and do not necessarily control the sentence imposed?

DEFENDANT DAVIS:      Yes, ma'am.

.         .         .

THE COURT: Do you understand that in the federal system parole has been abolished and if you are sentenced to prison you will not be released on parole?

DEFENDANT DAVIS: Yes, ma'am.

.        .        .

THE COURT: Do you also understand that under some circumstances you or the government may have the right to appeal any sentence that I impose? That is true for you, Mr. Body. But in Mr. Davis' case, . . . as part of your plea agreement, you have waived certain of your rights to appeal and in your case you have reserved the right to contest on appeal or in a post-conviction proceeding only if punishment is imposed in excess of the statutory maximum, if punishment is imposed that constitutes an upward departure from the guideline range, or if you have a claim of ineffective assistance of counsel. Do you, Mr. Davis, understand that you have waived your right to appeal or to file a post-conviction proceeding in all but those three circumstances outlined in your plea agreement?

DEFENDANT DAVIS: Yes, ma'am.

.        .        .

THE COURT: . . . Do each of you understand that you have a right to plead not guilty to any offense charged against you and to persist in that plea and that you would then have the right to a trial by jury, at that trial you would be presumed to be innocent and the government would have to prove your guilt beyond a reasonable doubt, you would have the right to the assistance of counsel for your defense, the right to see and hear all of the witnesses and have them cross-examined in your defense, the right on your own part to decline to testify unless you voluntarily elected to do so in your own defense, and the right to [the issuance of] subpoenas to compel the attendance of witnesses to testify in your defense?

DEFENDANT DAVIS: Yes, ma'am.

.    .    .

THE COURT:    And do you understand that if you went to trial and decided not to testify or to put on any evidence at all, those facts could not be used against you?

DEFENDANT DAVIS:    Yes, ma'am.

.    .    .

THE COURT:    Do you further understand that by entering a plea of guilty, if the plea is accepted by the Court, there will be no trial and you will have waived or given up your right to a trial as well as those other rights associated with a trial that I've just described?

DEFENDANT DAVIS:    Yes, ma'am.

.    .    .

THE COURT:    . . . Mr. Davis, you're pleading guilty to a charge of violating Title 21, United States Code, Section 841(a)(1), and so are you Mr. Body. And in order to convict either of you of that offense, the United States would have to prove that you knowingly and willfully possessed a controlled substance, as charged, and that you possessed that substance with the intent to distribute it or that you actually distributed it.

Do you understand what the government would have to prove in order to convict each of you of that offense?

DEFENDANT DAVIS:    Yes, ma'am.

.    .    .

THE COURT:    . . . Now, Mr. Davis, I had asked you earlier if you had signed the factual resume attached to the plea agreement and you said you had. And I want to make sure that you understand that by signing the factual resume you are agreeing that the government could prove the facts set forth in that document in

order to support your guilty plea. Do you understand and agree to that?

        DEFENDANT DAVIS:     Yes, ma'am.

.     .     .

        THE COURT:     All right. Now I'll ask each of you: How do you plead to the charge, guilty or not guilty?

        DEFENDANT DAVIS:     Guilty.

.     .

        THE COURT:     . . . It is the finding of the Court in the case of  United States versus Corey Ramon Davis and in the case of the United States versus James Body that each defendant is fully competent and capable of entering an informed plea, that each defendant is aware of the nature of the charges and the consequences of the plea, and that the pleas of guilty are knowing and voluntary pleas supported by an independent basis in fact containing each of the essential elements of the offense. Each plea is therefore accepted and the defendant is now adjudged guilty of that offense.

(*Id*. at 2, 3, 4, 4-5, 6, 7, 7-8, 8-9, 9-10, 10-11, 11-12, 13 & 13-14)

    5.     The Presentence Investigation Report was prepared by the Probation Office on June 22, 2009 and provided to the parties. (*See* Doc. 32, at 1) This sealed report was filed with the Court on July 17, 2009. (*See* Docket Sheet Entry) Approximately one week after the presentence report was filed with the Court, Davis' retained counsel, John A. Bivens, Esquire, filed a motion to withdraw[3] and

---

[3]     Retained counsel moved to withdraw because he "received a temporary suspension of his license to practice law from the Alabama Bar Association . . . and is not able to go forward with the hearing on July 27, 2009[.]" (*Id*. at 1)

incorporated in that document objections to the presentence report. (*See* Doc. 33) The motion to withdraw was granted on July 24, 2009 (Doc. 34)[4] and, on July 29, 2009, W. Gregory Hughes, Esquire, was appointed to represent Davis (Doc. 36). Appointed counsel was thereafter granted an extension of time to file objections to the presentence report. (*See* Docs. 38-39)

6.       On September 21, 2009, appointed counsel not only filed objections to the presentence investigation report (Doc. 40) but, as well, a motion to withdraw guilty plea on the basis that "the Defendant did not understand that the only possible sentence that he would receive under the plea agreement would be a life sentence." (Doc. 41) The following objections were made to the presentence report:

> 1.       The Defendant objects to the weight of the drugs attributable    to him.
> 2.       The Defendant objects to the criminal history attributable to him.
> 3.       The Defendant objects to the enhanced sentence of life in the penitentiary imposed under paragraph 80.

(Doc. 40) Based upon a total offense level of 27, a criminal history category of III, and the amount of drugs involved in the offense, the probation officer recommended that Davis receive the mandatory minimum enhanced sentence of

---

[4]       In the order granting Bivens' motion to withdraw, the Court stuck Bivens' objections to the presentence report. (*See id.*)

life imprisonment. (*See* Doc. 32, **SENTENCING RECOMMENDATION**, at 1-3)

7.       On October 1, 2009, counsel for Davis moved to withdraw the previously-filed motion to withdraw guilty plea (Doc. 45); this motion was immediately granted by the Court and the sentencing hearing was scheduled for October 13, 2009 (Doc. 46). During the sentencing hearing on October 13, 2009, counsel for Davis withdrew all objections to the presentence report (Doc. 51, Sentencing Hearing Transcript, at 2), after which the following occurred:

> THE COURT:       . . . I find that the total offense level in this case is 27 with a criminal history category of III. However, the enhancement information filed by the United States Attorney's Office requires a mandatory life sentence, so that the guidelines are not the usual level 27, criminal history category III. Are there any objections to those findings?
>
> MR. HUGHES:       No, ma'am, Your Honor.
>
> MR. MAY:   No, Your Honor.
>
> MR. HUGHES:       If it please the Court, I have gone over that with Mr. Davis extensively and I have rooted and dug around and explained to him about the situation that comes about when there's an enhancement. It's not even up to Your Honor; you have to do what the law says. And he understands that. He . . . is cooperating and attempting to cooperate further and we would hope and expect that at some point – and I understand it's not guaranteed or anything – but that there would be a rule 35 motion down the road to alleviate some of this.
>
> THE COURT:       All right. Do you have anything else that you would like to say on behalf of Mr. Davis?
>
> MR. HUGHES:       No, ma'am.

THE COURT: All right. Mr. Davis, do you have anything that you would like to say before I impose sentence in your case?

THE DEFENDANT: I ask the Court to have mercy on me. . . . I just really don't understand. This is my first time of going to prison and I'm facing a life sentence. I don't know. (Shaking head.)

THE COURT: Well, you understand that the Court is required to follow the law in this case, and that the law in this case requires a life sentence. You understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Does the United States have anything that you would like to say, Mr. May?

MR. MAY: Your Honor, the United States is recommending a sentence at the low end of the guidelines, which in this case is a life sentence. The defendant does have a cooperation agreement with the United States and has provided some information of several targets, and we just haven't made those cases yet. We do anticipate making at least one of those, in which case there's a good chance this defendant would receive a downward departure, a rule 35, once the cases are made.

THE COURT: All right. Well, I have considered the sentencing guidelines in this case and I've considered the statutory purposes of sentencing, and the enhanced sentence is actually a statutory sentence. So the guidelines are trumped by the statutory sentence. And I find that the Court is required to impose that statutory sentence. And so I am going to do that.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Corey Ramon Davis, is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of life as to count one.

I do recommend that you be imprisoned at an institution where a residential comprehensive substance-abuse treatment program is available.

Although you are sentenced to a mandatory minimum penalty of life, if the Bureau of Prisons releases you early for some reason that is not at this time foreseen, you shall be placed on supervised release for a term of 10 years on count one.

Within 72 hours of release from the custody of the Bureau of Prisons, you shall report in person to the probation office in the district to which you are released.

While on supervised release, you shall not commit any federal, state, or local crimes, you shall be prohibited from possessing a firearm or any other dangerous device and shall not possess a controlled substance.

In addition, you shall comply with the standard conditions of supervised release as recommended by the United States Sentencing Commission and on record with this Court.

The Court orders that the defendant also comply with the following special condition[] of supervised release: The defendant shall participate in a program of testing and treatment for drug and/or alcohol abuse as directed by the probation office.

The Court finds that the defendant does not have the ability to pay a fine, and therefore a fine is not imposed.

As I indicated before, the advisory guideline range is not applicable and is trumped by the statutory mandatory minimum of life and therefore I find, because it is the law, it provides for a reasonable sentence. The sentence imposed addresses the seriousness of the offense and the sentencing objectives of punishment, deterrence, and incapacitation.

It is ordered that the defendant pay a special assessment in the amount of $100 on count one, which shall be due immediately.

Now, having stated the sentence I intend to impose, are there legal objections to it at this point?

MR. HUGHES: No, ma'am.

MR. MAY: No, Your Honor.

THE COURT: I hereby impose the sentence as previously stated.

Now, Mr. Davis, you can appeal your conviction if you believe that your guilty plea was unlawful or involuntary or if there's some other fundamental defect in the proceeding that was not waived by your guilty plea.

You also have a statutory right to appeal the sentence itself in certain circumstances. However you entered into a plea agreement which waives certain of your rights to appeal the sentence. Such waivers are generally enforceable. But if you believe the waiver to be unenforceable, you can test that theory in the appellate court. If you do decide to appeal, you must do so within 10 days of entry of judgment in this case, and Mr. Hughes could file that notice for you.

(*Id*. at 2-7) Final judgment was entered on October 13, 2009 committing Davis to the custody of the United States Bureau of Prisons for a term of life. (Doc. 47)

8. On June 9, 2010, Davis filed the present collateral attack on his conviction and sentence pursuant to 28 U.S.C. § 2255. (Doc. 48) Therein, petitioner makes clear that he raises the following claims which he contends entitle him to relief: (1) ineffective assistance of trial counsel due to counsel failing to file a direct appeal challenging his life sentence; (2) his plea of guilty was not voluntarily and intelligently entered as he was tricked and duped into pleading guilty by information he received from retained counsel, John Bivens, that his

sentence would not exceed 120 months; and (3) his life sentence is unconstitutional because the 100 to 1 ratio punishes a "'suspect class'" disproportionately to other races prosecuted for the identical controlled substance. (*See id*.)

9.    The United States filed its response in opposition on September 14, 2010 and therein contends that petitioner's claims have no merit. (Doc. 53) Attached to the response is the affidavit of petitioner's appointed counsel, W. Gregory Hughes, Esquire, same reading, in relevant part, as follows:

> I was appointed to represent Corey Ramon Davis[] as problems arose with his former counsel, Mr. John Biv[e]ns. I got into the case after the Defendant had pled guilty and after Mr. Biv[e]ns had withdrawn.

> In preparing the Defendant's case, I met with him at least three (3) times in the Escambia County Jail. I talked with the investigating agents, U.S. Attorney, and also with the Defendant by phone, and a number of the Defendant's family members. I also spoke with the State court attorney who was handling the Defendant's capital case in Marengo County. I obtained the records from the trustee handling Attorney Biv[e]ns['] files.

> I attempted to abide by every instruction given to me by Mr. Davis[] throughout my representation. I did advise him that I believed that he would not be able to withdraw his guilty plea because he provided me no facts to support a withdrawal.

> I further advised him that I thought his only chance of getting a sentence less than the life sentence was to cooperate with the authorities and try to get a reduction in his sentence. On September 28, 2009, I sent him a letter to that effect . . . .[5]

---

[5]    This letter reads, in relevant part, as follows:

(Continued)

On September 18, 2009, he signed a proffer letter to protect him with regard to any information that he might provide.[6] On October 10, 2009, I spoke with him with regard to the withdrawal of the guilty plea, and he advised that I should withdraw the Motion to Withdraw the Guilty Plea, but leave the objections to the PSI in place and I did so.

_____

I have discussed your situation with the Prosecutor and the Agent, and the Prosecutor advises me that from the help and cooperation that you have already provided, you should be able to get a downward departure from the life sentence. He cannot make any guarantee or a firm recommendation until the conclusion of their investigation. The important thing is that they are not willing to litigate with you and use your cooperation to give you a downward departure.

This is basically what I told you in our meeting. Based upon your instructions in our meeting, I filed a Motion to Withdraw the Guilty Plea and objections to the enhancement in the Presentence Investigation Report.

I am concerned that if we continue with our efforts to withdraw the guilty plea and/or the objections that seem to be proper, you will be deprived of the opportunity for a downward departure and it is my belief that the Judge will not let you withdraw the guilty plea, and will not grant our objections. If this happens, you will not receive any downward departure and you will be stuck with a life sentence.

My suggestion is that we withdraw the objections and the motion to withdraw the guilty plea and proceed forward on that basis. This is your only real chance to get out from under the life sentence, but I will comply with your wishes with regard to withdrawing the motion to withdraw the plea and the objections.

(Doc. 55, Exhibit 3)

[6]    The proffer letter signed by Davis on September 18, 2009 specifically provides that after his discussions with agents and the U.S. Attorney, the U.S. Attorney's office would "evaluate the information provided and [] contact [him] concerning whether or not an agreement can be reached as to what concessions or recommendations, if any, the United States Attorney for the Southern District of Alabama would be willing to make[.]" ((Doc. 55, Exhibit 4, at 2)

He was sentenced on October 13, 2009. On that date, he was advised of his right to appeal and he signed a Notice of No Appeal [], which he instructed me to hold until I heard otherwise.[7] I never had any further communication from him regarding an appeal and have maintained his Notice of No Appeal as directed. He was aware of the time limitations for filing his notice of appeal.

He was aware that his appeal rights were severely curtailed by the appeal waiver contained in his plea agreement, but had Mr. Davis advised that he wished to appeal, I would have done so.

(Doc. 53, Exhibit 1, Affidavit of W. Gregory Hughes, at 1-2) Petitioner has never filed a reply to the government's response, though the time for the filing of that reply was extended by the Court to November 19, 2010. (*Compare* Doc. 57 *with* Doc. 54)

## CONCLUSIONS OF LAW

1.      28 U.S.C. § 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without

---

[7]      The Notice of No Appeal contains not only Davis' signature but also the signature of his attorney, W. Gregory Hughes, both dated October 13, 2009. (Doc. 53, Exhibit 2) The language appearing before Davis' signature is the following: "I have been advised by the Court and by my attorney of my right to appeal my conviction and sentence. I have consulted with my attorney, who has explained the advantages and disadvantages of taking an appeal. I have had sufficient time to consider my options and require no further explanation. After consideration, it is my desire to inform the Court that I do not wish to take an appeal." (*Id.*)

jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

2. In this instance, Davis contends, in large measure, that constitutionally ineffective assistance of counsel entitles him to the relief afforded by 28 U.S.C. § 2255.[8] In order to establish a claim of ineffective assistance of

---

[8] Once a criminal defendant enters a guilty plea, he waives all non-jurisdictional challenges to the conviction's constitutionality and only an attack on the voluntary and knowing nature of the plea can be raised. *See McMann v. Richardson*, 397 U.S. 759, 772, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). Stated differently, "a voluntary and intelligent plea made by an accused person, who has been advised by ***competent counsel***, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546-2547, 81 L.Ed.2d 437 (1984) (emphasis supplied). Therefore, when a § 2255 motion is filed collaterally challenging convictions obtained pursuant to guilty pleas, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989).

In this case, Davis contends that his guilty plea was induced by assurances from his retained attorney, John Bivens, that he was facing a maximum term of imprisonment of 120 months. This claim is clearly without merit inasmuch as the plea agreement, which Davis not only signed but also reviewed with his attorney, specifically informed him that because of enhancement information he was subject to "**a minimum mandatory sentence of life imprisonment[.]**" (Doc. 29, at ¶ 10) Moreover, Davis specifically acknowledged during his change of plea hearing that no one made any different assurances to him to induce him to plead guilty (Doc. 50, at 6) and he also acknowledged his understanding that he was facing a minimum mandatory sentence of life imprisonment (Doc. 50, at 8); therefore, had he really not understood he was facing a life sentence prior to the hearing he certainly could have informed the Court then that he had changed his mind and was choosing not to plead guilty (*see* Doc. 50, at 13 ("How do you plead to the charge, guilty or not guilty? . . . Guilty.")). Finally, the facts in this case establish that Davis informed appointed counsel, W. Gregory Hughes, Esquire, to withdraw a previously-filed motion to withdraw his guilty plea, same being premised (Continued)

counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail." *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926, 122

---

upon his alleged failure to understand that the only sentence he could receive under the plea agreement was a life sentence. (*Compare* Doc. 45 *with* Doc. 53, Exhibit 1) All of these facts clearly establish that Davis' guilty plea was knowingly and voluntarily entered with full knowledge that he was facing a mandatory minimum sentence of life imprisonment, as opposed to a term of imprisonment of 120 months.

To the extent it is petitioner's contention that his attorney (Bivens) was ineffective in advising him that he was facing a maximum term of 120 months imprisonment, as opposed to life imprisonment, he has clearly not met the cause prong of the *Hill v. Lockhart* standard. *See United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993) ("A miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel."), *cert. denied*, 510 U.S. 1184, 114 S.Ct. 1236, 127 L.Ed.2d 579 (1994). Moreover, prejudice is lacking in view of the fact that Davis instructed appointed counsel, W. Gregory Hughes, to withdraw a previously-filed motion to withdraw guilty plea, a motion which was premised upon Davis' alleged failure to understand that the only possible sentence he could receive under the plea agreement would be a life sentence. This action establishes that petitioner would never have insisted upon going to trial because such action would have eliminated the one chance Davis could have availed himself of to receive a sentence of less than life imprisonment and that would be by cooperating with the government and having the government make a Rule 35 motion for reduction in sentence.

S.Ct. 1295, 152 L.Ed.2d 208 (2002).[9] The *Strickland v. Washington* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

> To succeed on such a claim, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).[10] In addition, the defendant must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370. In other words, . . . [a petitioner] "must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded [not] guilty and would . . . have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.

---

[9]    It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See Hagins v. United States,* 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley*, 209 F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022, 123 S.Ct. 545, 154 L.Ed.2d 432 (2002).

[10]    "When analyzing ineffective-assistance claims, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (citations omitted).

*Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) (footnote, brackets and ellipses added), *cert. denied sub nom. Coulter v. Jones*, 516 U.S. 1122, 116 S.Ct. 934, 133 L.Ed.2d 860 (1996).[11]

3.       When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oats v. Moore*, 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

4.       Petitioner's primary contention is that his appointed attorney, W. Greg Hughes, was ineffective in light of his failure to file an appeal attacking his lifetime sentence. Because Davis has not contradicted the affidavit statements of Mr. Hughes that he signed a notice of no appeal which he instructed counsel to hold and, thereafter, had no other communication with his attorney (*see* Doc. 53, Affidavit of W. Gregory Hughes, at 2), though given ample opportunity to do so (*see* Docs. 54 & 57), the undersigned concludes that Davis did not instruct his attorney to appeal his lifetime sentence. Accordingly, Hughes' representation of

---

[11]       "'[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson, supra,* 256 F.3d at 1176 (citation omitted).

Davis in this regard was not deficient. *See, e.g., Smith v. United States*, 522 F.Supp.2d 233, 238 (D. D.C. 2007) ("[T]he Court finds that petitioner did not ask his counsel to file an appeal, and therefore, counsel's representation of defendant was not ineffective."); *cf. Gomez-Diaz v. United States*, 433 F.3d 788, 791-792 (11th Cir. 2005) ("The [Supreme] Court [in *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000)] first reaffirmed the well-settled rule that an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se. The Court went on to hold that, even if a client has not made a specific request of his attorney to file an appeal, a court must inquire whether the attorney consulted with the client regarding the advantages and disadvantages of appealing and made a reasonable effort to determine the client's wishes. ***If so, the attorney has only acted unreasonably if he has ignored the client's wishes to appeal the case***." (internal citations omitted; emphasis supplied)).

5.    Petitioner's final argument is an equal protection one, Davis contending that his enhanced "guideline range" sentence of life imprisonment was based on "wrong information" used to pass the 100 to 1 ratio within the Anti-Drug Abuse Act of 1986 thereby punishing a "suspect class" of Americans (i.e., African-Americans) disproportionately to another race of individuals (whites) punished for the same controlled substance.  Assuming petitioner has not waived

his right to raise this issue,[12] the undersigned finds this argument to be off base because petitioner's sentence was not a guideline sentence generated by the 100 to 1 ratio but, instead, it was a sentence mandated by 21 U.S.C. § 841(b) ("If any person commits a violation of this subparagraph [(a)] . . . of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release[.]"). Even if Davis' argument in this regard was not totally specious, it is nonetheless an old one which has been roundly rejected by all courts of appeal to have addressed same, *see, e.g., United States v. Gaines,* 122 F.3d 324, 329-330 (6th

---

[12]     In accordance with paragraphs 20-21 of the plea agreement, Davis waived his "right to challenge any sentence . . . imposed[] or the manner in which it was determined, in any collateral attack, including . . . a motion brought under 28 U.S.C. § 2255[,]" except: "a. Any punishment imposed in excess of the statutory maximum; b. Any punishment that constitutes an upward departure from the guideline range; or c. A claim of ineffective assistance of counsel." (Doc. 29, at ¶¶ 20 & 21) Because there is no argument, nor can there be any, that petitioner's punishment was in excess of the statutory maximum or that his punishment constituted an upward departure from the guideline range, and it being clear that the Court discussed the foregoing waiver provisions with petitioner (Doc. 50, at 10), the undersigned concludes that petitioner has waived his right to make this type challenge to his sentence, *compare Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir.) ("It is well-settled that sentence-appeal waivers are valid if made knowingly and voluntarily. In the context of a direct appeal, we have held that for a sentence-appeal waiver to be enforceable, '[t]he government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver.'" (internal citations omitted)), *cert. denied*, 546 U.S. 902, 126 S.Ct. 246, 163 L.Ed.2d 226 (2005) *with Mendoza v. United States*, 2009 WL 3317170, *3 n.2 (S.D. Ga. 2009) ("By 'appeal,' this Court here refers to the right to 'appeal or contest, directly or collaterally, [a] sentence.' Moreover, case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings.") (internal citations omitted)), assuming it is a viable challenge.

Cir.) (concluding "Congress did not grant the courts broad discretion to apply the sentencing ratio of their choosing based on alleged injustices inherent in the 100:1 ratio," and despite the Sentencing Commission's recommendations to eliminate the quantity ration, "[w]hen Congress and the Sentencing Commission disagree on matters of sentencing policy, Congress trumps"), *cert. denied*, 522 U.S. 962, 118 S.Ct. 396, 139 L.Ed.2d 310 (1997); *United States v. Butler,* 102 F.3d 1191, 1194-1195 (11th Cir.) (rejecting an equal protection challenge based on the disparate impact of the 100:1 quantity ratio), *cert. denied*, 520 U.S. 1219, 117 S.Ct. 1712, 137 L.Ed.2d 836 (1997); *United States v. Teague*, 93 F.3d 81, 84-85 (2d Cir. 1996) (rejecting an equal protection challenge to the disparate impact of the 100:1 quantity ratio between blacks and whites, concluding there was no evidence "Congress reaffirmed the sentencing disparity at least in part 'because of,' not merely 'in spite of,' its adverse effects upon blacks") (internal quotation omitted)), *cert. denied*, 519 U.S. 1067, 117 S.Ct. 708, 136 L.Ed.2d 629 (1997); *United States v. Lewis*, 90 F.3d 302, 306 (8th Cir. 1996) (rejecting an equal protection challenge based on the Sentencing Commission's 1995 recommendations to eliminate the 100:1 quantity ratio due to its disparate impact on African-American defendants, holding "[i]t is not for us to decide whether the 100:1 ration is wise or equitable; that is a question for the popularly chosen branches of government."), *cert. denied sub nom. Davis v. United States*, 519 U.S. 1069, 117 S.Ct. 713, 136 L.Ed.2d 632 (1997), and, therefore, it has no merit.

6. In consideration of the foregoing, the Magistrate Judge recommends that the Court deny Davis' motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255.

7. Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied on the merits of underlying constitutional claims, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see also id.* at 483-484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues

presented were '"adequate to deserve encouragement to proceed further."'"); *see Miller-El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). With respect to petitioner's claims, the undersigned recommends that the Court find that reasonable jurists could not debate whether Davis' § 2255 motion to vacate should be resolved in a different manner or that any of the issues presented are adequate to deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability.

## CONCLUSION

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request to vacate, set aside or correct his sentence (Doc. 48) should be **DENIED**. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of

the Magistrate Judge.

**DONE** this the 1st day of December, 2010.

    s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.      *Objection.*  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[13] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded).*  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[13]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).